ALFRED GOTTESFELD AND SOPHIE GOTTESFELD, PLAIN-
TIFFS-RESPONDENTS AND CROSS-APPELLANTS, v. JOHN G.
KAMINSKI, DEFENDANT-APPELLANT AND CROSS-RESPON-
DENT.

Superior Court of New Jersey
Appellate Division

Argued March 10, 1987—Decided April 8, 1987.

Before Judges PRESSLER, GAULKIN and ASHBEY.

*Jay R. Benenson* argued the cause for appellants (*Benenson & Scher, P.A.,* attorneys; *Jay R. Benenson* and *Carlton T. Spiller,* on the brief).

*Leonard A. Peduto, Jr.* argued the cause for respondents (*Klein, Chapman, Greenburg, Henkoff & Siegel,* attorneys; *Isaac Henkoff,* on the brief).

The opinion of the court was delivered by

GAULKIN, J.A.D.

Alfred and Sophie Gottesfeld brought this action to foreclose a second mortgage given to secure payment of a $15,000 note executed by John G. Kaminski as president of Next Flight Out, Inc. (NFO), and guaranteed by Kaminski individually. Kaminski answered that the mortgage was in violation of the Secondary Mortgage Loan Act (SMLA), *N.J.S.A.* 17:11A–34 *et seq.,* and of the usury laws, *N.J.S.A.* 31:1–1 *et seq.* In a letter opinion issued following a plenary hearing, the trial judge concluded that (1) the SMLA did not apply to the transaction, (2) the loan to NFO "was simply a device employed to circumvent the usury law" and (3) plaintiffs were entitled to recover the principal balance of the loan together with interest at the rate of 9%. The judgment of foreclosure thereupon entered was later amended to disallow any recovery of interest. Defendant appeals from that amended judgment, urging again that the note and mortgage are unenforceable under the SMLA. Plaintiffs cross-appeal, contending principally that they should have been awarded interest at the legal rate.

I.

The operative facts are undisputed. Kaminski was in the tavern business. In 1977, he was introduced to the Gottesfelds by Robert H. Chester, the Gottesfelds' attorney. Kaminski was referred to Chester by a real estate agent. Chester testified that the agent "understood that I represented potential lenders"; he had brought approximately ten other borrowers to the

Gottesfelds. The Gottesfelds and Kaminski engaged in a series of loan transactions which culminated in the execution of the note and mortgage here at issue on May 17, 1978. The mortgage encumbers Kaminski's residence at 308 Crawford Terrace, Union, New Jersey. The note fixes interest at 24% per annum; attached to it is a resolution, signed by Kaminski as President-Secretary of NFO, certifying that at a special joint meeting of stockholders and directors, the officers of NFO were authorized to enter into the mortgage note.

Chester testified that NFO was a corporation he had formed for a client who had never utilized it. Although Kaminski apparently wanted the loan proceeds because he was purchasing another tavern, the record shows that he never conducted any business activities or held any assets through NFO. Indeed, the record is barren of any suggestion that Kaminski had any connection at all with NFO other than to execute the mortgage note as ostensible President-Secretary of the corporation.

The Gottesfelds paid the loan proceeds to Chester, who deposited them in his firm account. After making various deductions, Chester forwarded the net proceeds by checks drawn to Kaminski individually. Kaminski, whose memory had since been impaired by a stroke, testified that he believed he had used the loan proceeds for his newly acquired tavern.

## II.

The Gottesfelds concededly were not licensed under the SMLA to engage in the secondary mortgage loan business. As recited by the trial judge in his letter opinion, they contended "that they were not engaged in the business of making secondary loans as defined in the [SMLA] at the time of this transaction and were therefore not obliged to comply with the licensure provision and other conditions contained therein." The trial judge found that contention to have merit:

There is not sufficient evidence before me to establish that Gottesfeld regularly made loans to individuals by second or other inferior liens on real estate. The evidence of other loans made by Gottesfeld are not enough to establish that Gottesfeld was in the business of making second mortgage loans. In dealing with what constitutes doing business our courts have held that conduct which constitutes only a single transaction or a few isolated transactions does not fall within the meaning of the language "engaged in the business." *See State v. Whittaker*, 143 *N.J.Super.* 358 (Law Div.1976).

Additionally there is no evidence before this court that the plaintiff "... advertises, causes to be advertised, solicits, negotiates, offers to make or makes a secondary mortgage loan in this State, whether directly or by any person acting for his benefit; ..." *N.J.S.A.* 17:11A–36(a).

We find that analysis to be at odds with both the language and the intent of the SMLA.

*N.J.S.A.* 17:11A–36 directs that "[n]o person shall engage in the secondary mortgage loan business in this State unless such person shall first obtain a license under [the SMLA]." The section goes on to define "engaged in the secondary mortgage loan business":

For the purpose of this act, a person is deemed to be engaged in the secondary mortgage loan business in this State if:

(a) such person advertises, causes to be advertised, solicits, negotiates, offers to make or makes a secondary mortgage loan in this State, whether directly or by any person acting for his benefit; or

(b) such person becomes the subsequent holder of a promissory note or mortgage, indenture or any other similar instrument or document received in connection with a secondary mortgage loan.

A person is thus engaged in the secondary mortgage loan business if he "makes *a* secondary mortgage loan in this State." (Emphasis supplied). The statute previously had applied only to persons engaged in a "regular course of business"; a person was declared not to be so engaged "if he makes or negotiates not more than 2 secondary mortgage loans in a calendar year." *N.J.S.A.* 17:11A–2, repealed by *L.* 1970, *c.* 205, § 30. Those "regular course of business" criteria are no longer in the statute. Under *N.J.S.A.* 17:11A–36, the making of a single secondary mortgage loan can now constitute engaging in the secondary mortgage loan business. That broadened reach of *N.J.S.A.* 17:11A–36 is entirely consistent with the legislative policy to give "generous protection to borrowers" and to impose

"strong measures" to deal with a "harsh business." *Westervelt v. Gateway Financial Service,* 190 *N.J.Super.* 615, 620–621 (Ch. Div.1983). *State v. Whittaker,* 143 *N.J.Super.* 358 (Law Div.1976), relied upon both by the Gottesfelds and the trial judge, is not persuasive of a contrary conclusion; the private detective licensing statute interpreted there did not define what constituted doing "business." *But cf. In re Baker,* 8 *N.J.* 321, 338 (1951) (a single act calling for skills and learning of an attorney constitutes the practice of law).

■■ The Kaminski loan was clearly a business transaction to the Gottesfelds, and they took a secondary mortgage as security. Those facts require the conclusion that the Gottesfelds were then engaged in the secondary mortgage loan business. The making of a single secondary mortgage loan in a non-"business" context might well fall outside the ambit of the statute, as where a parent lends money to a child and secures the loan by a secondary mortgage. But where, as here, a person engaged in a lending business makes a secondary mortgage loan, even if only on a single occasion, he is deemed by *N.J.S.A.* 17:11A–36 to be engaged in the secondary mortgage loan business and to require a license.

### III.

■ The Gottesfelds contend that because the mortgage note is the corporate obligation of NFO, the transaction is not a "secondary mortgage loan" within the meaning of *N.J.S.A.* 17:11A–35a, which defines such a loan as one made to an individual or group of individuals however organized, "except a corporation." Because he found that the Gottesfelds did not "regularly" make secondary mortgage loans, the trial judge found it unnecessary "to determine if [NFO] is the type of corporation that would bring this transaction within the corporate exception in [*N.J.S.A.* 17:11A–35a]." However, in sustaining Kaminski's usury defense, the judge found that "the corporation here was a shell used to cloak the loan" and that "the

real nature of the loan" was to Kaminski individually. Those findings are amply supported by the record and compel the conclusion that the corporate exception in *N.J.S.A.* 17:11A–35a is not available to the Gottesfelds. *Cf. Selengut v. Ferrara*, 203 *N.J.Super.* 249 (App.Div.1985), certif. den. 102 *N.J.* 316 (1985).

■ Since the Gottesfelds engaged in the secondary mortgage loan business without a license and made a secondary mortgage loan to Kaminski, the obligation imposed on Kaminski is void and unenforceable. *N.J.S.A.* 17:11A–58; *Westervelt v. Gateway Financial Service, supra,* 190 *N.J.Super.* at 620–621. That resolution renders moot the remaining issues raised on the appeal and the cross-appeal, with the exception of the Gottesfelds' contention that the trial judge erred in vacating the default judgment which had been entered prior to the proceedings we have discussed. That contention is clearly without merit. *R.* 2:11–3(e)(1)(E).

The December 16, 1985 judgment is reversed. The matter is remanded to the Chancery Division for the entry of judgment in accordance with this opinion.